J-S13017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT GERRY KLUVER, JR., INDIVIDUALLY, AND ON BEHALF OF MINOR CHILDREN, J.D.K. & J.L.K. | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : | |
| | : | No. 1499 WDA 2023 |
| JOSHUA GERRY KLUVER | : : | |

Appeal from the Order Entered November 17, 2023
In the Court of Common Pleas of Somerset County Civil Division at
No(s):  655-2023

BEFORE:   KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                    **FILED:  May 20, 2024**

Robert  Gerry  Kluver,  Jr.  ("Father")  appeals  pro  se  from  the  order entered  by  the  Somerset  County  Court  of  Common  Pleas  ("trial  court"), denying his petition for protection from abuse ("PFA")[1] filed on his own behalf and on behalf of his minor children against his adult son, Joshua Gerry Kluver ("Kluver").  Father argues that the trial court abused its discretion in denying entry of a final PFA order based upon actions Kluver took against his younger brothers.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] ***See*** 23 Pa.C.S. §§ 6101-6122.

Father and Leona E. Broda ("Mother") were never married, but had three sons together, Kluver (born October 2002), J.D.K. (born June 2007), and J.L.K. (born January 2009).[2] The Mother and Father have a contentious relationship and have each filed numerous petitions seeking custody modification. In September 2016, after Mother and Father learned Kluver had sexually abused his younger siblings,[3] they recognized the need to keep the younger children separated from Kluver and agreed to a custody arrangement whereby the younger children stayed with Mother on weekdays while Kluver stayed with Father, and Mother had custody of Kluver on the weekends, while Father had custody of the younger children on alternating weekends. Mother was required to find childcare for the younger children when Kluver was also at her home on the weekends.

Following a protracted history, on November 8, 2021,[4] the parties entered into a custody agreement for the two younger children, which superseded all prior orders.[5] The order gave Mother and Father shared legal

---

[2] We will refer to the minor children involved in this dispute by their initials to protect their identity.

[3] According to Father, Kluver was adjudicated delinquent of indecent assault in November 2016.

[4] The order was dated October 26, 2021, but not filed until November 8, 2021.

[5] Kluver was not subject to the custody order because he was over eighteen years old at the time.

custody, Mother primary physical custody during the school year, Father partial physical custody during the school year, and the parties shared physical custody during the summer. The order also stated that the parties were prohibited from physically disciplining the minor children. Notably, the order did not state anything related to Kluver, and contained no prohibitions for contact between the minor children and their older brother.

On November 6, 2023, Father filed a PFA petition on behalf of the minor children and himself against Kluver.[6] Father argued that Kluver was physically disciplining the minor children because Mother could not under the custody order and had punched J.D.K. in the face in 2022. Father further pointed to Kluver's prior assaults against his brothers. The trial court held an ex parte hearing wherein Father testified. Subsequently, the trial court granted a temporary PFA order on behalf of the minor children against Kluver, which was effective until May 6, 2024. The trial court denied the PFA petition as to Father.

Thereafter, the trial court held a hearing on the petition.[7] The trial court interviewed J.D.K. and J.L.K. in chambers outside the presence of Mother and

---

[6] Father also filed a PFA petition on behalf of his minor children against Mother, which is subject to a separate appeal.

[7] On November 6, 2023, Father also filed a petition for contempt of the custody order, noting that Mother violated the order prohibiting physical discipline of the children. That same day, Father filed an emergency custody petition, seeking full custody of the younger children. The trial court denied the petition for contempt, and that order is subject to a separate appeal.

Father. J.D.K. testified that he and Mother had an argument about the death of his bearded dragon and that in his anger, he punched the birdcage. N.T., 11/17/2023, at 7, 13-14. At this point, J.D.K. indicated that he heard a taser owned by Mother "go off" and "fight-or-flight kicked in." *Id.* at 7, 12; *see also id.* at 10-11 (wherein J.D.K. described the taser as looking like a small flashlight and electricity comes out of the top and further noted that Mother used the device on their cats when they did something wrong). J.D.K. stated that he ran to his room, shut the door, and held the door shut. *Id.* at 7-8. He testified that Mother attempted to push the door open and again heard the click of the taser. *Id.* at 8. Mother eventually called Kluver to open the door. *Id.* J.D.K. indicated that Kluver ran into his door, which caused J.D.K. to open the door, and J.D.K. wedged himself between the door and the wall. *Id.* Mother came into the room, took J.D.K.'s laptop, and left the room. *Id.* As J.D.K. attempted to close the door, he hit Kluver's foot. *Id.* In anger, Kluver punched a hole in the door and then left. *Id.* J.D.K. testified that Kluver is never physical with him and never disciplines him. *Id.* at 15.

J.L.K. told the trial court that he has no issues with Kluver. *Id.* at 33, 40. He indicated that Kluver never physically disciplines him, but will roughhouse with him. *Id.* at 39. J.L.K. stated that Kluver was never mean to him. *Id.* J.L.K. further confirmed that Kluver punched a hole in the J.D.K.'s bedroom door, but testified that he did not hit J.D.K. *Id.* at 40-41.

After hearing the testimony, the trial court declined to enter a final PFA order and vacated the temporary PFA order. *See id.* at 43 (noting there were no grounds for the entry of a final PFA order in either case), 44 (stating that J.D.K., Mother, and Kluver "got upset and did things they probably, looking back, realized they shouldn't have done," but finding no acts of abuse that "would warrant the entry of a PFA order"), 46 (entering orders "vacating the temporary PFA [o]rders and denying the entry of a final PFA [o]rder"); *see also* Trial Court Opinion, 1/9/2024, at 2 (unnumbered) ("At the conclusion of the interviews with the [minor] children, it was clear that no 'abuse' had occurred as that term is defined in 23 Pa.C.S.[] § 6102 of the PFA Act.").

Father filed a timely appeal and a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925. He raises the following question for our review: "Did the trial court err as a matter of law and commit an abuse of discretion by vacating the temporary protection from abuse order against [Kluver] and subsequently denying entry of a final PFA order against appellee despite the preponderance of evidence?" Father's Brief at 5.

> Our standard of review for PFA orders is well settled. In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, i.e., enough to tip a scale slightly.

*E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (citations, quotation marks, and brackets omitted). "[W]e review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court." *Kaur v. Singh*, 259 A.3d 505, 509 (Pa. Super. 2021). "Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *S.G. v. R.G.*, 233 A.3d 903, 907 (Pa. Super. 2020) (citation, quotation marks, and brackets omitted).

Father contends that the trial court abused its discretion by vacating the temporary PFA order and denying entry of a final PFA order against Kluver. Father's Brief at 20, 32, 36. Father argues that the testimony established that Kluver participated in Mother's attempt to shock J.D.K. with the electronic device. *Id.* at 21, 23. Father claims that the PFA order was warranted because Kluver opened J.D.K's bedroom door at Mother's behest, despite J.D.K.'s fear of being shocked by Mother, and Kluver later punched a hole into the door. *Id.* at 22-23, 27-28, 36. Father acknowledges that this claim is premised on this Court's finding in his favor in the appeal from the order denying his PFA petition against Mother. *Id.* at 24 .

Further, Father asserts that Kluver had engaged in his own abusive conduct against the minor children. *Id.* at 21, 24-25. Father maintains that the trial court did not address his testimony that Kluver punched J.D.K. in the face, Kluver's prior delinquency adjudication, and the custody orders

restricting him from living with his brothers. *Id.* at 24-27, 31-32, 35-36; *see also id.* at 31 (noting the trial court did not opine on his credibility). Father claims that this evidence established that Kluver engaged in a course of conduct that put the minor children in reasonable fear of bodily injury. *Id.* at 28-29. Father contends that although the children testified they did not fear Kluver, Father had a reasonable basis to fear for the children. *Id.* at 29. Father notes that the trial court must have found abuse initially because it granted a temporary PFA order, and asserts that the trial court does not provide a basis in the record for reversing itself and denying a final PFA order. *Id.* at 30-31.

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *E.K.*, 237 A.3d at 519 (citation omitted).

The PFA statute defines "abuse," in relevant part, as

one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

* * *

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following

the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a). The PFA Act does not define bodily injury but instead adopts the definitions set forth in the Crimes Code of "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301; *see also id.* § 6102(b) ("Terms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S. (relating to crimes and offenses).").

We conclude that the trial court properly found Kluver did not abuse the minor children. *See* Trial Court Opinion, 1/9/2024, at 2. In fact, both children testified that Kluver is not physical with them and never disciplines them. N.T., 11/17/2023, at 15, 39. Further, while Father cites to his own testimony to show that Kluver punched J.D.K. in the nose, it was for the trial court to resolve any conflicting testimony. *See S.G.*, 233 A.3d at 907. Here, the trial court specifically found the children, who testified that Kluver did not physically discipline or harm them, to be credible. *See* N.T., 11/17/2023, at 43. Additionally, the fact that Kluver punched a hole in J.D.K.'s bedroom door does not establish that he abused J.D.K., either by attempting to cause bodily injury or intentionally, knowingly, or recklessly causing bodily injury. Accordingly, we conclude that the trial court did not abuse its discretion by finding that J.D.K. suffered no injuries that impaired his physical condition or caused him substantial pain. *See Commonwealth v. Davidson*, 177 A.3d

955, 958-59 (Pa. Super. 2018) (stating that the factfinder determines whether individual suffers pain or impairment).[8]

Moreover, Father's reliance on Kluver's past adjudication does not warrant the entry of a final PFA order in this case. Although we acknowledge that past abusive conduct by a defendant is a necessary inquiry when determining a course of conduct that puts a person in reasonable fear of bodily injury for the entry of a PFA order, **E.K.**, 237 A.3d at 522, both children testified they do not fear Kluver. Further, and contrary to Father's argument, the most recent custody order between Mother and Father did not prohibit Kluver from having contact with his younger brothers. Indeed, Father has not established through any evidence that Kluver engaged in a course of conduct placing J.D.K. or J.L.K. in reasonable fear of bodily injury.

Finally, Father presents no supportive case law that the trial court must grant a final PFA order if it had previously issued a temporary PFA order. **See** Pa.R.A.P. 2119(a) (stating that an argument must cite to pertinent case law). In any event, we note that a temporary PFA order only stays in "effect until a court modifies or terminates it after providing the parties with notice and a hearing on the matter." **S.G.**, 233 A.3d at 908. Therefore, we find no abuse of discretion in the trial court's refusal to enter a PFA order against Kluver.

_____

[8] We further note that we affirmed the trial court's denial of a final PFA order in Father's case against Mother. **See Kluver v. Broda**, 1500 WDA 2023 (Pa. Super. 2024) (non-precedential decision).

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  5/20/2024